UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
JANE DOE and JOHN DOE,                                      :
                                                            :
                          Plaintiffs,                       :
                                                            :      06 Civ. 3761 (GEL)
     -against-                                              :
                                                            :      **OPINION AND ORDER**
JAMIE DEL RIO, individually and as officer;                 :
VINCENT KONG, individually and as officer;                  :
STEVEN BOBBETT, individually and as officer;                :
SCOTT BRADY, individually and as officer;                   :
RAYMOND KELLY, individually and as                          :
Commissioner of the New York City Police                    :
Department; and CITY OF NEW YORK,                           :
                                                            :
                          Defendants.                       :
                                                            :
------------------------------------------------------------x

Carolyn A. Kubitschek, Lansner & Kubitschek, New York, New York, Susan D. Walsh, Gould Reimer Walsh Goffin Cohn, LLP,  for Plaintiffs.

Michael A. Cardozo, Corporation Counsel of the City of New York (David M. Hazan, of Counsel), New York, New York, for Defendants.

GERARD E. LYNCH, District Judge:

In this civil rights action, plaintiffs Jane and John Doe seek damages from defendant police officers and the City of New York for allegedly egregious acts of police brutality and abuse. They have brought the suit pseudonymously, with the permission of a judge of this court obtained *ex parte* before filing, contending that their interests in privacy outweigh the normal presumption that suits be brought in the parties' proper names. Defendants now move to revoke this permission and require the caption to reflect the true names of the plaintiffs. The motion will be granted.

**BACKGROUND**

The complaint in this case alleges the following facts.[1] Plaintiffs, a married couple, were accosted by plainclothes police officers late at night on February 20, 2005. Both plaintiffs were recent law school graduates at the time, though not yet admitted to the bar. The officers demanded John Doe's identification and wallet. When plaintiffs, believing they were being robbed, demanded to see badges or identification, the officers threw John Doe first against a wall, then to the ground, injuring him.

At this point, a marked police car containing several uniformed officers, including defendant Scott Brady, a sergeant, arrived on the scene. Brady and the other defendant officers then placed John Doe under arrest and drove him to a police precinct, where he was further beaten into unconsciousness.[2] Jane Doe was left on the street, despite her protests that she was left without means of transportation and that her husband was holding their money, cell phone, and apartment keys.

Jane Doe eventually made her way to the police station, where she sought the release of her husband. Although this request was not granted, Brady told her that he would direct the

---

[1] The factual recitation in this section of the Court's opinion is drawn from the allegations of the complaint. At this stage of the case, no discovery has been had, and no evidence has been taken. The Court therefore has no basis for making any findings of fact, and takes no position with respect to the merits of the action. The present motion concerns a purely procedural question, and the description of the plaintiffs' allegations in this section of the opinion is set forth as necessary background to understanding the basis for the motion before the Court.

[2] The complaint does not make clear whether the officer defendants were the plainclothes officers who initiated the encounter or the uniformed officers who arrived on the scene with Sergeant Brady. The complaint does clearly assert that defendants Jamie Del Rio, Vincent Kong, and Steven Bobbett, after consultation with Brady, arrested John Doe, and that Del Rio and Kong beat Doe at the stationhouse. Commissioner Kelly is not accused of personal involvement in any of the night's events.

arresting officers to reduce the charges against John Doe, and offered to drive Jane Doe to her apartment. Upon arrival, Brady persuaded Jane Doe to admit him to her apartment, where he poured alcoholic drinks for them. Brady then pulled Jane Doe to him and "fondl[ed] her breasts, arms, neck and back, kissing her, and rubbing his body against her," despite her physical resistance. (Compl. ¶¶ 45-46.) Brady eventually desisted and left the apartment, though the next day he telephoned Jane Doe several times, leaving threatening voicemail messages.

John Doe was charged in criminal complaints with public lewdness, assault, and resisting arrest. The charges eventually were dismissed on speedy trial grounds. After complaints to the police department resulted in no disciplinary action against the defendant officers, plaintiffs filed this lawsuit. Defendants now move to compel the suit to be brought in plaintiffs' true names.

## DISCUSSION

I.      Legal Standards

Rule 10(a) of the Federal Rules of Civil Procedure expressly requires that civil actions be brought in the true name of the plaintiffs, providing that every pleading shall carry "the title of the action," and that in the complaint such title "shall include the names of all the parties."[3] This rule, moreover, has constitutional overtones. "Plaintiffs' use of fictitious names runs afoul of the public's common law right of access to judicial proceedings," Does I thru XXIII v. Advanced

---

[3] Defendants also cite Rule 17(a) as supporting their request that plaintiffs be ordered publicly to reveal their true names. However, Rule 17(a), which provides that "[e]very action shall be prosecuted in the name of the real party in interest," addresses a concern not at issue in this dispute. The rule's reference to the "name" of the real party in interest does not concern the formal requirements of captioning, which are governed by Rule 10(a), but rather ensures that the suing party possess the substantive right being asserted, thus protecting defendants against indiscriminate litigation by those lacking a real interest. See 6A Wright, Miller & Kane, Federal Practice and Procedure, § 1541 at 321-22 (2d ed. 1990). It is not disputed in the instant case that the plaintiffs possess a substantive right to pursue their claims against defendants.

Textile Corp., 214 F.3d 1058 (9th Cir. 2000), a right that is supported by the First Amendment, U.S. Constit. amend. I. See also Doe v. Deschamps, 64 F.R.D. 652, 653 (D. Mont. 1974) ("[T]he public has a right of access to the courts.  Indeed, lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them.  Among those facts is the identity of the parties.").

Courts, therefore, begin with a presumption against anonymous or pseudonymous pleading.  See, e.g., Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992) (weighing the plaintiff's interest in pseudonymity against the "constitutionally-embedded presumption of openness in judicial proceedings").  While our Court of Appeals has not specifically addressed the issue of pseudonymous pleadings, it has emphasized in other contexts the "presumption of access" to judicial proceedings, noting that this presumption "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice . . . . [P]ublic monitoring is an essential feature of democratic control." United States v. Amodeo, 71 F.3d 1044, 1048 (2d. Cir. 1995).  The Second Circuit has instructed that "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."  Id. at 1049.  Information most clearly due for disclosure includes any "document which is presented to the court to invoke its powers," id. at 1050, a category encompassing complaints.  Requiring a plaintiff to place his or her name on the complaint serves the constitutional goal of enabling public monitoring of the courts: The press and public can hardly make an independent assessment of the facts underlying court cases, or even assess judicial impartiality or bias, without knowing who the litigants are.

Despite this presumption against anonymous or pseudonymous pleading, it is common ground that this presumption can be overcome, and that courts have discretion to permit such pleading in appropriate circumstances. See, e.g., James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993) ("The decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion."). The weight of the presumption of openness is such, however, that courts have granted requests for pseudonymity only "in limited 'matters of a sensitive and highly personal nature.'" Heather K. v. City of Mallard, 887 F. Supp. 1249, 1255 (N.D. Iowa 1995), quoting Deschamps, 64 F.R.D. at 653. As the parties here agree, such matters are "exceptional" (P. Mem. 6, quoting America Online, Inc. v. Anonymous Publicly Traded Co., 261 Va. 350, 363 (2001); D. Mem. 3, citing Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992)).

In deciding whether to permit pseudonymous pleading, courts must balance "the plaintiff's right to privacy and security against the dual concerns of (1) the public interest in identification of litigants and (2) the harm to the defendant stemming from suppression of plaintiff's name." Smith, 105 F. Supp. 2d 40, 44 (E.D.N.Y. 1999) (internal quotation marks and citation omitted). "The ultimate test for permitting a plaintiff to proceed anonymously is whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." Free Speech v. Reno, 98 Civ. 2860 (MBM), 1999 WL 47319, at *2 (S.D.N.Y. Feb. 1, 1999) (internal quotation marks and citations omitted). In undertaking this balance, courts have considered such factors as (1) whether the plaintiff is suing the government or a private person; (2) whether the plaintiff would be compelled to disclose intimate information; (3) whether the plaintiff would be

compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution; (4) whether the plaintiff would risk injury if identified; (5) whether the party defending against a suit brought under a pseudonym would thereby be prejudiced; (6) the ages of the parties whose identity is to be suppressed; (7) the extent to which the identity of the litigant has been kept confidential; (8) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (9) the public interest in guaranteeing open access to proceedings without denying litigants access to the justice system.[4]

These factors function in different ways. Several of them constitute specific aspects of a plaintiff's potential privacy interests. Three of the factors – the need to protect intimate information, the risk of injury, and the risk of disclosure of putatively illegal conduct – are different reasons why privacy may be important to a particular litigant.[5] Where one or more particular interests in privacy are present in a case, the weight to be attached to those interests may vary. The risk of injury may be physical or psychological, greater or less, more or less

---

[4] The first five factors were listed by the court in Doe v. Shakur, 164 F.R.D. 359, 361 (S.D.N.Y. 1996); the sixth was noted in James, 6 F.3d at 238; the seventh and eighth were listed in Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. 464, 467 (E.D. Pa. 1997), and recognized in Free Speech, 1999 WL 47319 at *2; and the last was noted in EW v. New York Blood Center, 213 F.R.D. 108 (E.D.N.Y. 2003). This list of factors is not intended to be exhaustive, and its length suggests the breadth of the discretion to be exercised.

[5] Indeed, the Ninth Circuit has listed these three interests in a manner that could be read to suggest they constitute distinct categories of cases in which anonymity may be granted. Advanced Textile, 214 F.3d at 1068. To the extent the list was so intended, it would appear unduly rigid: other types of privacy interests might suffice, and as noted below, these interests may often overlap in particular cases.

likely.[6] The intimacy of the facts to be disclosed may or may not rise to the level of "utmost intimacy" that some courts have suggested is required. Free Speech, 1999 WL 47319 at *2. Some of the factors mentioned affect the weight of the privacy interest involved. The age of the parties is such a factor; courts have been readier to protect the privacy of infant plaintiffs than of adults, see, e.g., James, 6 F.3d at 241; Doe v. Stegall, 653 F.2d 180, 186 (4th Cir. 1981), whether because children are conceived as more vulnerable or because the child whose privacy is at stake has not chosen for himself or herself to pursue the litigation. The extent to which the plaintiff's identity has been kept confidential may also affect the weight of the privacy interest; the plaintiff's interest in anonymity is weaker where anonymity has already been compromised.[7]

Other listed factors go more to the weight of the countervailing interest in open judicial proceedings. Judicial proceedings are an aspect of governance and thus should be open to public scrutiny in a democratic society. Yet while this interest is significant enough in itself to create a presumption in favor of disclosure, certain factors might affect the weight of the interest in openness in particular cases. For instance, when a plaintiff challenges governmental or pseudogovernmental action, the judicial process serves as a significant check on abuse of public

---

[6] Some courts have formulated the "risk of injury" factor more narrowly, as a risk of physical retaliation from defendants or others in the community. See, e.g., Advanced Textile, 214 F.3d at 1071. As a court in this circuit has noted, it is unclear why injuries of other sorts, such as psychological harm, should not be equally relevant, where the showing of likelihood and degree of injury is sufficient. Smith, 105 F. Supp. 2d at 45.

[7] The relationship of any prior confidentiality breach to the particular privacy interest asserted may also matter. For instance, if a plaintiff specifically fears retaliation by defendants or their associates, prior disclosure to the defendants of the plaintiff's identity might moot any request for anonymity. However, if the risk of retaliation or harassment relates to the public at large, defendants' knowledge of plaintiff's identity would not necessarily negate the protective effect of ordering that the name be concealed from the general public.

power. Thus, as the courts have noted, it is in the public interest that the price of access to the courts not be too high. New York Blood Center, 213 F.R.D. at 112-13. Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued. See, e.g.. Doe v. Stegall, 653 F.2d 180, 185 (5th Cir. 1981). The value of open proceedings disappears when there are no proceedings to be had.

Moreover, where a lawsuit is brought solely against the government and seeks to raise an abstract question of law that affects many similarly situated individuals, the identities of the particular parties bringing the suit may be largely irrelevant to the public concern with the nature of the process. See, e.g., Free Speech, 1999 WL 47310 at *2; Provident Life, 176 F.R.D. at 467. The particular identity of Roe in Roe v. Wade has little bearing on the nature of the dispute or the merits of the case.[8]

There is a significant interest in open judicial proceedings even in ordinary civil litigation between private parties. Private civil suits, individually and certainly in the aggregate, do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms. Further, where individual defendants are sued based not on abstract challenges to public policies but rather with regard to particular actions and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial

---

[8] Even in such a case, however, the public's interest is reduced, not eliminated. Note the considerable public interest in Roe's identity, and in her subsequent experiences, when that identity eventually was disclosed. See, e.g., Lisa Belkin, Woman Behind the Symbols in Abortion Debate, N.Y. Times, May 9, 1989, at A18; Sue Fahlgren, Harassment Seen Escalating; Roe Plaintiff Goes into Hiding, Associated Press, April 5, 1989. Much of the attention may have amounted to mere curiosity, not constitutionally protected public monitoring of the courts; but it is possible that learning her identity aided some observers in assessing the historic adjudication of her legal claims.

interest in accurate fact-finding and fair adjudication.  Courts have expressed concern that maintaining a plaintiff's anonymity could "unfairly impede defendant's ability to impeach the plaintiffs' credibility" through cross examination and introduction of personal evidence at trial. James, 6 F.3d at 241; see also Doe v. Indiana Black Expo, Inc., 923 F.Supp. 137, 142 (S.D. Ind. 1996).  Moreover, concealing the name of a party could deprive a litigant and the court of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses.  See Richmond Newspapers, Inc. v. Virginia, 488 U.S. 555, 596-97 (1980) (Brennan, J., concurring) ("Public trials come to the attention of key witnesses unknown to the parties."); see also San Bernadino County Dep't of Pub. Soc. Servs. v. Superior Court, 283 Cal. Rptr. 332, 341 (Cal. Ct. App. 1991) ("open proceedings discourage perjury and might encourage other witnesses to come forward which in turn leads to more accurate fact-finding").  Where the defendants' identities are known, but not the plaintiffs', information about only one side may thus come to light.

Exercising the discretion to permit pseudonymous pleading, then, requires a careful and contextual examination of the circumstances of particular cases.

II.     The Standards Applied

Plaintiffs' case for pseudonymity rests on the privacy interests claimed by Jane Doe, who alone alleges facts of a distressing, sexual nature.  Plaintiffs do not argue that John Doe has an interest in anonymity in his own right.  Individuals alleging police brutality or false arrest routinely bring such cases in their own names, and the events surrounding such accusations, while sometimes embarrassing or traumatic for the victims of assault, are routinely disclosed in public proceedings without any contention that such matters are the sort of intimate or private

details that create an exception to the generally public nature of litigation.

Jane Doe's claimed privacy interests consist of two types: an interest in avoiding exposure because of the intimacy of the matters involved, and an interest in mitigating injury that would result from her public identification.[9]

A.Intimacy of Matters

Plaintiffs claim that the nature of sexual assault, as a general matter, is intrinsically private. As another judge of this court has already observed, "whether the victim of a sexual assault may prosecute a civil suit for damages under a pseudonym" is a "difficult question." Shakur, 164 F.R.D. at 360. Historically, an exaggerated concern for female chastity and a regrettable inclination to blame the victim for sexual assaults, along with society's general respect for sexual privacy, have resulted in an atmosphere in which victims of sexual assault may experience shame or damage to reputation. It would be callous to pretend that this atmosphere has entirely dissipated, or to insist that victims of such assault lack privacy interests because most people today understand that the attacker, not the victim, should be stigmatized and ashamed.

Nevertheless, although courts have granted pseudonymity largely or merely because of the sensitive nature of, and stigma attached to, the subject matter in certain cases,[10] anonymous

---

[9] Although plaintiffs stress the "power" generally possessed by police officers (P. Mem. 11), they do not rely on any threat of retaliation by defendants (who in any event already know plaintiffs' identities) as a basis for pseudonymous pleadings in this case.

[10] See, e.g., New York Blood Center, 213 F.R.D. at 112("Although plaintiff has made no particularized showing of any specific harm or stigma . . . questioning relating to plaintiff's method of contracting [hepatitis B] will inevitably involve issues relating to her sexual conduct of great intimacy . . . . Thus, plaintiff's privacy concerns appear to be substantial ones, and long-recognized in the cases."); Doe v. United Services Life Ins. Co., 123 F.R.D. 437, 439, 439 n.1

pleading has frequently been rejected in cases alleging sexual assault.[11] The pattern is far from universal, however. See, e.g., Smith, 105 F. Supp. 2d 40. The divergence of outcomes in these cases reemphasize that there is unlikely to be a categorical answer to the question of anonymity across all civil cases involving sexual assault. Discretion must be exercised on a case-by-case basis, depending on the particular circumstances before the court. Smith illustrates the need for such careful analysis of the factual record. In Smith, the court reversed its initial denial and granted plaintiff's request on reconsideration, after plaintiff presented particularized evidence of possible psychological harm from being identified. The court deemed plaintiff's allegations likely to prompt intrusion into "matters of utmost privacy" and "cause social stigmatization and mental anguish," but it required a particularized showing of the harm such intrusiveness could cause before deciding to override the presumption of disclosure. Id. at 42.

While there may be circumstances where the sensitivity of the subject matter is so great as in itself to justify pseudonymity without a specific showing of harm, this case, like Smith, is not of such extreme sensitivity. Plaintiffs allege that defendant Brady "pulled plaintiff Jane Doe

---

(S.D.N.Y. 1988) ("Cases where a party risks public identification as a homosexual . . . raise privacy concerns that have supported an exception . . . . This court's decision to permit Doe to proceed pseudonymously reflects a concern for his public identification as a homosexual, not as a concern for his employment [prospects]."); W.G.A. v. Priority Pharmacy, Inc., 184 F.R.D. 616, 617 (E.D. Mo. 1999) ("It is understandable that plaintiff does not wish to be publicly identified as an individual with AIDS, which is a personal matter of the utmost intimacy. Persons with AIDS may be subjected to discrimination in the workplace, schools, social settings and public accommodations.").

[11] Pseudonymity request of plaintiff alleging sexual assault denied in, e.g.: Shakur, 164 F.R.D. 359; Doe v. Bell Atlantic Bus. Sys. Servs., Inc., 162 F.R.D. 418 (D. Mass. 1995); Doe v. University of Rhode Island, 93 Civ. 560 (RWL), 1993 WL 667341 (D. R.I. Dec. 28, 1993) (report and recommendation); Doe v. Hallock, 119 F.R.D. 652 (N.D. Cal. 1981); Doe v. Hartz, 52 F.Supp.2d 1027 (N.D. Iowa 1999); Doe v. North Carolina Central University, 98 Civ. 1095 (JAB), 1999 WL 1939248 (M.D.N.C. Apr. 15, 1999).

towards him and attacked her sexually, by fondling her breasts, arms, neck and back, kissing her, and rubbing his body against her." (Compl. ¶ 45.) The Court is loath to weigh degrees of violation, and does not minimize the wrongfulness of the acts alleged or the suffering of anyone subjected to them; there is no such thing as a "mere" or "minor" forcible indignity. Nevertheless, there *are* degrees of abuse, and the actions alleged here are no more intimate than those alleged in hundreds of sexual harassment cases that are prosecuted openly in the victims' names every day in our courts. The facts of this case are not the sort of exceptional circumstances that in and of themselves justify overriding the constitutional presumption of openness.

That the plaintiffs claim the alleged incident has placed a strain on their marriage adds little to their argument. Plaintiffs inapposite cite Griswold v. Connecticut, 381 U.S. 479 (1965), which, like other prominent substantive due process decisions such as Lawrence v. Texas, 539 U.S. 558 (2003), and Roe v. Wade, 410 U.S. 113 (1973), prohibit *state interference* with private autonomy in connection with sexual relationships.[12] These cases provide no support for a right to avoid *public knowledge* of possibly embarrassing facts of plaintiffs' marital relationship. The marital relationship is not, in itself, a matter of "utmost intimacy," Southern Methodist University, 599 F.2d at 713, warranting the grant of pseudonymity. Loss of consortium claims involving these sorts of intimate facts are common in tort cases, and plaintiffs

---

[12] Litigants involved in intimate decision-making, such as using contraceptives or seeking abortion, have sometimes been permitted to proceed pseudonymously; the dispositive factor appears to be plaintiffs' exposure to state enforcement for engaging in prohibited conduct, not their exposure to public curiosity. See Southern Methodist University Assoc. of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 712-13 (5th Cir. 1979) (discussing exceptions to the disclosure presumption in various cases of "utmost intimacy").

routinely seek attendant damages in their own names.  Allowing anonymity simply because intimate facts of a marital relationship are relevant to a plaintiff's claims would render anonymous pleading commonplace, rather than exceptional.

B.   Risk of Injury

Plaintiffs further claim that Jane Doe experienced psychological harm as a result of the alleged sexual assault and that disclosure of her identity in connection with these facts would exacerbate that harm.  In support, they submit a letter from a social worker who purports to have treated Jane Doe for psychological consequences including Post-Traumatic Stress Disorder ("PTSD") and depression.  (See Kubitschek Decl. Ex. 1.)[13]  Evidence of this type proved persuasive in Smith, 105 F. Supp. 2d 40, and this Court agrees that psychological harm is a class of injury that could justify pseudonymous litigation.  Yet this case is significantly distinguishable from Smith.

In Smith, plaintiff submitted her own sworn statement attesting to the likelihood of harmful psychological and emotional consequences if she were forced to identify herself, 105 F. Supp. 2d at 43 (see citations to submissions), which plaintiffs here have not done.  More important, however, plaintiff's supporting medical submission in that case, based on a diagnosis of dissociative identity disorder, predicted a consequence that would specifically result from *public disclosure of plaintiff's name*: "[P]roceeding publicly would cause [plaintiff] to decompensate psychologically to a point at which she could not . . . pursue the current legal process and would suffer severe risk to her safety and to her survival."  Id. (describing

---

[13] The therapist's opinions do not take the form of sworn testimony.  For present purposes, the Court assumes that the therapist would express the same views under oath.

psychiatrist's affidavit) (internal quotation marks and brackets omitted).

Here, plaintiff's therapist asserts that "it appears very likely, given her high degree of fear and reactivity, that, should her case no longer remain anonymous, . . . she will suffer a recurrence of PTSD along with depression." (Kubitschek Decl. Ex. 1. at 2.) Yet nothing in the therapist's letter or plaintiffs' other papers establishes any link between *public disclosure of plaintiff's name* and the described psychological risk to Jane Doe. The therapist's opinion is explicitly based on the observation that PTSD "can be retriggered if the individual is re-exposed to the perceived threat." (Id.) Being "re-exposed" to the perceived wrong, however, is an inevitable consequence of litigation itself. If the case goes forward, Jane Doe will be deposed, no doubt in the presence of the accused defendant; in the less certain event of trial, she will presumably testify in a public courtroom and be subjected to cross-examination. These procedures would occur whether or not the pleadings disclosed Jane Doe's true name. There is simply no way to conclude that granting plaintiffs permission to proceed under pseudonyms will prevent Jane Doe from having to revisit the traumatic events – in other words, from being "re-exposed to the perceived threat." (Id.)[14]

The credibility of the therapist's opinion must also be discounted somewhat because of the circumstances under which it was formed. Her conclusion is based on a single meeting, of unspecified duration, on August 6, 2006, more than a year after completion of the therapist's treatment of Jane Doe for depression and PTSD – which itself was hardly extensive, dating from

---

[14] Moreover, unlike in Smith, the therapist has not suggested that this action will be abandoned if it cannot be pursued pseudonymously. The psychological stakes described here amount to possible recurrence of a serious condition given circumstances that would exist whether or not Jane Doe were publicly identified.

March 1, 2005, through June 14, 2005 – and about a week after defendants' motion was filed. Although the report thus comes from a therapist who was at one time engaged in treating the plaintiff, it is not based on ongoing familiarity with the plaintiff's situation, but rather appears to have been hastily prepared in contemplation of litigation.

Given these limitations, the Court cannot conclude that plaintiffs have made a sufficient showing of likelihood of harm to outweigh the strong presumption in favor of open disclosure of the identities of parties to litigation.[15]

## CONCLUSION

The Court appreciates that the allegations in the complaint concern events that anyone would prefer to keep private, and that there is evidence that Jane Doe has been psychologically harmed by those events. Nevertheless, the nature of the charged acts, repulsive as they are, is not so extreme as to support sufficiently an interest in anonymity. The Court accepts that, as her therapist has attested, revisiting these events may occasion anxiety for Jane Doe. But the greater part of the distress occasioned by the lawsuit is intrinsic to the pursuit of this action, even under conditions of anonymity. Any additional burden resulting from the public revelation of

---

[15] Plaintiffs' suggestion that the case proceed with all parties' identities masked does nothing to redress the balance. A grant of pseudonymity to the defendants – who have not sought such relief and have no apparent basis for doing so – would only exacerbate the infringement of the public's right to know, especially in a case such as this, where such an order would serve to shield actors accused of violating a public trust. The reasons for public disclosure in this case do not stem from any desire to equalize the reputational harms to the parties, but from the public benefits of open judicial proceedings, including the advantages to all parties and to the courts of more accurate fact-finding. In any event, even if extending pseudonymous treatment to both sides were responsive to the issues, the offer comes too late. Defendants have already been publicly identified by plaintiffs' pleadings, so whatever protection defendants might have gained in return for loss of evidentiary opportunities is no longer realistically available.

plaintiffs' identities has not been shown to be exceptional, and it must be borne in light of the larger interest in open judicial proceedings.

As plaintiffs have not established that this is an exceptional case warranting pseudonymous litigation, defendants' motion to require amendment of the caption of the case is granted.

SO ORDERED.

Dated: New York, New York
       December 11, 2006

                                                    /s/ Gerard E. Lynch
                                                    GERARD E. LYNCH
                                                    United States District Judge